UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey, <br><br> Plaintiff-Appellant, <br><br> v. <br> DIOCESE OF ROCHESTER, <br><br> Defendant-Appellee, <br><br> and <br><br> OFFICIAL COMMITTEE OF UNSECURED CREDITORS, <br><br> Intervenor-Appellee. | District Court Case No. 6:24-cv-06621-CJS <br><br><br> Bankruptcy Adv. Proc. No. 23-2014-PRW |

## APPELLANT'S SUBMISSION OF ADDITIONAL AUTHORITY

Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York  13202
Telephone:  (315) 413-7112
Facsimile:  (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin (admitted *pro hac vice*)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone:  (202) 580-6640
Email:  mplevin@plevinturner.com

[additional counsel identified on next page]

- 2 -

David Christian (admitted *pro hac vice*)
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Telephone:  (312) 282-5282
Email:  dchristian@dca.law

Miranda H. Turner (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006
Telephone:  (202) 580-6640
Email:  mturner@plevinturner.com

*Attorneys for Appellant The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey*

Appellant The Continental Insurance Company ("CNA") hereby submits a pertinent and significant decision issued after the filing of CNA's reply brief. In *In re H&H Fast Properties, Inc.* (attached as Exhibit A), Chief Judge Jacqueline P. Cox of the Bankruptcy Court for the Northern District of Illinois addressed a lender's motion to enforce a settlement agreement with a debtor that "had not been signed by all of the parties" where the debtor withdrew its Bankruptcy Rule 9019 settlement approval motion two days before the scheduled hearing. (Slip op., Exh. A at 3-4.) The debtor argued that because the settlement agreement had not yet been approved by the bankruptcy court, it could not be enforced by the lender.

The bankruptcy court disagreed and enforced the settlement. Noting that the agreement expressly required the debtor to file a settlement approval motion, and relying on *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534 (E.D.N.Y. 2017), *aff'd,* 734 Fed. Appx. 68 (2d Cir. 2018), the court concluded that it should grant the lender's motion to enforce because the debtor did not establish "good cause" to withdraw the approval motion. The court rejected debtor's argument that the agreement could not be enforced because it had not yet been approved, reasoning that "[t]he problem is that the Debtor caused the problem by withdrawing its motion seeking approval under Rule 9019." (*Id.* at 8.) "Is a debtor bound by its agreement in the absence of bankruptcy court approval? Yes, debtors should be held to account for abandoning agreements with its creditors where the debtor has prevented the court from addressing the issue and posits no explanation for its change

of heart." (*Id.* at 9.) The court emphasized the Second Circuit's statement in *Liberty Towers* that "[a]llowing a party to withdraw from a settlement pending court approval would deter parties from entering into settlements in the first place, would permit parties to abuse the bankruptcy process, and would run contrary to generally applicable contract and settlement principles in this Circuit." (*Id.* at 10.)

Judge Cox's decision supports CNA's arguments here, and its reasoning based on Second Circuit precedent should be adopted. Debtor here lacked good cause to cease its efforts to obtain bankruptcy court approval of the settlement agreement under Rule 9019, and it should not be permitted "to breach its agreement for no good reason."

Dated: June 19, 2025               Respectfully submitted,

                                    /s/ *Jeffrey A. Dove*
                                   Jeffrey A. Dove
                                   BARCLAY DAMON LLP
                                   Barclay Damon Tower
                                   125 East Jefferson Street
                                   Syracuse, New York  13202
                                   Telephone:  (315) 413-7112
                                   Facsimile:  (315) 703-7346
                                   jdove@barclaydamon.com

                                   Mark D. Plevin (admitted *pro hac vice*)
                                   PLEVIN & TURNER LLP
                                   580 California Street, Suite 1200
                                   San Francisco, California 94104
                                   Telephone:  (202) 580-6640
                                   Email:  mplevin@plevinturner.com

                                   David Christian (admitted *pro hac vice*)
                                   DAVID CHRISTIAN ATTORNEYS LLC

105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 282-5282
Email: dchristian@dca.law

Miranda H. Turner (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
Email: mturner@plevinturner.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| H & H Fast Properties Inc., | ) | Bankr. No. 23-16874 |
| | ) | |
| Debtor. | ) | Chief Judge Jacqueline P. Cox |

**Memorandum Opinion on Motion to Enforce Settlement Agreement (Dkt. 152)**

The Debtor H & H Fast Properties Inc. ("Debtor") sought relief under Subchapter V of chapter 11 of the Bankruptcy Code on December 18, 2023. The Debtor filed Adversary Proceeding 24-00020 herein on January 22, 2024. Adv. Dkt. 1. According to its Schedule A/B filed on January 18, 2024, the Debtor owns real estate located at 3328 E. 88th St., Chicago, IL; 4840 S. Ellis Ave., Chicago, IL; 20745 S. Alexander St., Olympia Fields, IL; 8736 S. Mackinaw, Chicago, IL and 8724 S. Mackinaw, Chicago, IL. Schedule A/B, Bk. Dkt. 22, pp. 4-5.

## I. Background

A Hearing Stipulation filed in the adversary proceeding on March 11, 2024 details the relationship between the Debtor and Toorak Capital Partners, LLC ("Toorak"). Adv. Dkt. 23. The property in dispute herein is a building located at 20745 S. Alexander Street, Olympia Fields, Illinois (60461) (the "property"). Toorak is the owner and holder of a commercial mortgage loan made in 2019 to the Debtor in the principal amount of $203,575.00. The loan is secured by security interests in the property, including a mortgage and security agreement, an assignment of rents, leases and a fixture filing statement which was recorded with the Cook County Recorder of Deeds; Toorak has a first-priority lien on the property.

Non-debtor Amanda L. Henderson guaranteed the payment and performance of the loan on September 3, 2019. On July 20, 2022, Toorak commenced a foreclosure action in the Circuit Court of Cook County, Illinois to enforce the loan documents; that proceeding is captioned *Toorak Capital Partners, LLC v. H & H Fast Properties, Inc.*, Case No. 2022 CH 07009. Toorak is seeking foreclosure of both real and personal property, damages for breach of the note and damages against Amanda L. Henderson for breach of the guaranty. On July 18, 2024, creditor Toorak filed a Motion for Relief from Stay in the bankruptcy case. Bk. Dkt. 59.

On August 16, 2023, Toorak filed a combined motion for a default order, summary judgment and judgment of foreclosure and sale in the foreclosure case.

Following the December 18, 2023 bankruptcy filing, on January 3, 2024, the foreclosure case judge stayed all proceedings therein against the Debtor and continued the matters against all other defendants to January 30, 2024. Hearing Stipulations, Adv. Dkt. 23, ¶ 13.

On January 22, 2024, the Debtor filed Adversary Proceeding number 24-00020 in the bankruptcy case wherein it sought an extension of the automatic stay and a preliminary injunction to stay Toorak from prosecuting the guaranty claim against the Debtor's principal, Amanda L. Henderson. Adv. Dkt. 1.

The Debtor filed a motion for a preliminary injunction in the Adversary Proceeding on January 23, 2024. Adv. Dkt. 7.

On January 30, 2024, the judge in the foreclosure case granted Toorak's motion, entering summary judgment in Toorak's favor and against the non-debtor guarantor Amanda L. Henderson in the amount of $317,578.92. Hearing Stipulations, Adv. Dkt. 23, ¶ 16.

On March 18, 2024, this court denied the Debtor's motion for a preliminary injunction, in

2

part, because Illinois Supreme Court Rule 304(a) barred enforcement of the judgment where the trial judge refused a request to allow enforcement of the judgment because not all claims in the lawsuit had been resolved. Essentially, Toorak could not enforce the judgments until all claims in the state court foreclosure case were resolved.

To date the Debtor has filed five (5) plans herein: (1) a March 18, 2024 Small Business Subchapter V Plan (Bk. Dkt. 43); (2) a May 20, 2024 First Amended Chapter 11 Small Business Plan (Bk. Dkt. 55); (3) a September 3, 2024 Second Amended Chapter 11 Small Business Plan (Bk. Dkt. 78); (4) a November 18, 2024 Third Amended Chapter 11 Small Business Plan (Bk. Dkt. 106) and (5) a January 31, 2025 Fourth Amended Chapter 11 Small Business Plan (Bk. Dkt. 131)..

On February 3, 2025, the Debtor's attorney filed a Motion to Approve Compromise or Settlement with Toorak pursuant to Federal Rule of Bankruptcy Procedure 2019 ("Fed. R. Bankr. P."); it was set for hearing on March 18, 2025.[1] Bk. Dkt. 133. That motion informed that all claims between the Debtor, Amanda L. Henderson and Toorak had been settled, although the settlement agreement had not been signed by all of the parties. The proposed settlement was expected to resolve confirmation of the Fourth Amended Small Business Subchapter V Plan, objections to the proof of claim of Toorak as well as the state court litigation.

According to the settlement approval motion a $526,587.88 judgment (as of November 30, 2024) was to be entered against Amanda L. Henderson in the state court case. That judgment was to be recorded. The 24-0020 Adversary Proceeding in this case was to be dismissed. The

---

[1] March 18, 2025 was the date set for a confirmation hearing on the Debtor's Fourth Amended Plan (Bk. Dkt.134). It was also the hearing date of Toorak's Motion for Relief from the Automatic Stay (Bk. Dkt. 135).

Debtor was required to pay Toorak $500,000 as follows: $10,000 on the effective date of the plan and $3000 on the first business day of each month thereafter for six (6) months. On the last business day of the sixth month after the plan effective date the Debtor was required to pay Toorak the balance of the settlement amount.

On March 16, 2025, the Debtor withdrew its motion seeking approval of the settlement agreement. Bk. Dkt. 153. Before the court is Toorak's March 14, 2025 Motion to Enforce Settlement Agreement. Bk. Dkt, 152. The Debtor filed a response to that motion on April 22, 2025. Bk. Dkt. 162. There the Debtor relies primarily on Fed. R. Bankr. P. 9019, arguing that because the settlement agreement has not been approved by the court, it is not valid and cannot be enforced.

## II. Discussion

### A. Generally, an Agreement has to be approved by Court Before it can be Enforced

If a debtor fails to perform after a court has approved its compromise or settlement, a bankruptcy judge can order the debtor to perform. *Petition of Baxter Corp.*, 269 F. 344 (6th Cir. 1920) ("Basic considerations of fairness and judicial efficiency counsel against allowing noncompliant parties to later raise objections to settlement agreements freely entered into."). In *In re Schumacher*, 2010 WL 11444287, *8 (C.D. Cal. January 15, 2010, *aff'd,* 617 Fed. Appx. 773 (9th Cir. Sep. 22, 2015)). a district court affirmed a bankruptcy judge's approval and enforcement of a settlement agreement:

> Thus, if the Court were to consider the merits of the Bankruptcy Court's 2005 and 2008 orders — which it need not do in light of the fact that Appellant is barred from challenging that order — the Court would hold that the Bankruptcy Court did not abuse its discretion in reaching its decisions. Appellant has failed to establish that the Order Approving the Settlement agreement is invalid, Appellant

4

may not prevent the enforcement of the court-approved agreement.

The problem before this court, however, is that the settlement agreement was withdrawn by the Debtor two (2) days before the hearing date set for court review. Can the bankruptcy court enforce an agreement where the Debtor, though bound to submit it for court approval, withdrew it, blocking court review? Yes, the court can enforce it as the settlement agreement required that:

> H&H shall file a motion to approve this Agreement (:the "Approval Motion") pursuant to an order (the "Approval Order") to be entered by the Bankruptcy Court in form and substance acceptable to Toorak, which such Approval Order shall include a waiver of the 14-day stay arising under Fed. R. Bankr. P. 6004(h).

Settlement Agreement, Ex.B (Part 3) to Motion to Enforce Settlement, Bk. Dkt. 152, Ex. B, p. 4, ¶ (C).(ii).

### B. Bankruptcy Judge Enforces an Agreement Where Debtors Withdrew Approval

In 2017, a debtor was compelled to file a motion to approve a settlement agreement where the debtor changed its mind about a settlement in order to accept a better deal. *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534 (E.D.N.Y. 2017), *aff'd,* 734 Fed. Appx. 68 (2nd Cir. 2018).

In the *Liberty Towers* case a mortgagee obtained judgments of foreclosure and sale against two properties, vacant adjacent lots the debtors owned. The debtors filed for relief under chapter 11 of the Bankruptcy Code a few months after the judgments of foreclosure and sale were entered.

The mortgagee filed a motion for relief from the automatic stay to allow it to proceed to a foreclosure auction. Its appraisal showed that the properties were worth less than the value of the mortgages. The motion was granted. The mortgagee became the winning bidder at the

foreclosure sale.

The debtors and the guarantor filed a motion to vacate the foreclosure sale. The state court judge gave the debtors a chance to redeem the property by making a $12,500,000.00 payment to the mortgagee on or before September 24, 2015, later extended to October 13, 2015. The debtors tried to transfer real property or membership interests to the mortgagee to redeem the mortgage.

After extensive litigation, including nine bankruptcy cases, the parties entered into a global settlement agreement on June 2, 2016. A junior secured creditor, NCC, took no part in the bankruptcy cases and did not sign the agreement.

Pursuant to the settlement agreement Richmond, an entity the mortgagee was to sell the properties to, was to obtain clear title. The mortgagee was to receive $10,500,000, reduced by up to $50,000.00 for bankruptcy case administrative expenses and up to $50,000.00 for other creditors of the debtors. The debtors agreed not to pursue any claims to the properties and to waive their rights to redemption. All litigation was to be discontinued and releases were to be executed.

The agreement also provided that the mortgagee would prepare and file a motion pursuant to Fed. R. Bankr. P. 9019 seeking bankruptcy court approval of the settlement agreement. Upon entry of a final order approving it, the agreement would be binding on all parties. Without bankruptcy court approval the agreement would be null and void. It was governed by New York law.

The mortgagee sought bankruptcy court approval of the settlement agreement. At the hearing on that motion the debtors withdrew their support for the settlement agreement. The

bankruptcy court held several hearings on the motion and approved it over the debtors' objection. The debtor and the junior secured creditor appealed.

The debtor and the junior secured creditor argued on appeal that the debtors were entitled to unilaterally rescind the agreement before it was approved by the bankruptcy court. They also argued that the mortgagee had no authority to submit the settlement agreement for approval and that the bankruptcy court should not have approved it in light of the junior creditor's objection.

The appellees argued that the existence of a superior offer was not a valid ground for rescission. They also argued that the "better offer" was impractical, that it might not come to fruition and that the mortgagee had authority to present the settlement agreement as a debtor in its own chapter 11 case as well as by the terms of the settlement agreement.

The district court ruled that a post settlement offer has no bearing on the enforceability of a settlement agreement. *Liberty Towers*, 569 B.R. at p. 541. Settlements are favored by the courts and can be set aside only for good cause, such as fraud, collusion, mistake, accident or some other ground of the same nature. *Id.* The Debtor H & H Fast Properties does not argue herein that good cause existed to justify its withdrawal of the motion. In fact, the Debtor's response to Toorak's motion to enforce the settlement agreement does not disclose why it withdrew its motion to approve the settlement agreement or posit any good cause grounds for its refusal to abide by it.

This court noted in footnote number 1 that the approval motion, the motion for relief from the stay and the confirmation of the plan were all set for hearing on March 18, 2025.

The Debtor argues in opposition to Toorak's effort to enforce the settlement agreement that it is not enforceable until the bankruptcy court approves it pursuant to Fed. R. Bankr. P.

9019(a). The problem is that the Debtor caused the problem by withdrawing its motion seeking approval under Rule 9019. The debtor relies on a 2009 Seventh Circuit ruling in a matter which resolved issues of whether the bankruptcy estate or a creditor owned causes of action involving conduct of the debtor's former principals. *In re Teknek, LLC*, 563 F.3d 639, 651-52 (7th Cir. 2009). That court noted that "because a trustee is required to get the bankruptcy court's approval before settling claims, the settlement itself is apparently of no effect." *Teknek*, 563 F.3d at 651. The court relied, in part, on *Yorke v. N.L.R.B.*, 798 F.2d 1138, 1147 (7th Cir. 1983) where the Seventh Circuit quoted a Ninth Circuit ruling that it "was well settled bankruptcy law that on important decisions, whatever their character, the Trustee must get the court's approval." (quoting *Local Joint Executive Board v. Hotel Circle*, 613 F.2d 210, 213 (9th Cir. 1980)).

      The reality is that trustees and debtors do not seek court approval of all important decisions. Creditors, debtors and trustees often negotiate and settle plan terms and claim allowance issues without obtaining court approval. Toorak makes this point convincingly in its reply pleading. Bk. Dkt. 163, p. 6. *See In re Szabo, Contracting, Inc.*, 283 B.R. 242, 251 (Bankr. N.D. Ill. 2002) ("Stipulated dispositions of claims do not necessarily require court orders to be effective:").

      The Debtor rests on a statement made by the Seventh Circuit in *Teknek* that the bankruptcy court lacked jurisdiction to approve a settlement while the parties before it were involved in an appeal. That makes sense. However, this court is not ruling on a matter now before a reviewing court. The Debtor's reliance on *Teknek* for the position that this court has no jurisdiction to enforce a settlement, absent court approval, is without merit. *Teknek* does not support the Debtor's contentions and is factually distinguishable, in that no appeal is pending

herein involving the issues before this court.

The Seventh Circuit's rulings in *Teknek* and *Yorke* do not involve a debtor who refused, in spite of its agreement's terms, to prosecute a motion seeking approval of a settlement agreement.

Is a debtor bound by its agreement in the absence of bankruptcy court approval? Yes, debtors should be held to account for abandoning agreements with its creditors where the debtor has prevented the court from addressing the issue and posits no explanation for its change of heart.

In *1992*. a bankruptcy court held that a stipulation in an Interim Order made by an applicant for compensation under 11 U.S.C. § 506© was in the nature of a settlement agreement and that district courts in the Northern District of Illinois, in general, support voluntary resolution of litigation through settlements. The bankruptcy court noted that "[ a] settlement agreement is a contract, which cannot be unilaterally repudiated by any of the parties*.*" *In re Evanston Beauty Supply, Inc.,* 136 B.R. 171, 177-78 (Bankr. N.D. Ill. 1992) (internal citations omitted).

### C. Whether the Debtor has Taken Inconsistent Positions

The Debtor argues that until Toorak complies with Fed. R. Bankr. P. 9019 it can't enforce the settlement agreement. The problem is that the Debtor's conduct in withdrawing the approval motion denied Toorak the opportunity to obtain approval. The Debtor should not be allowed to argue that a requirement has not been shown when it has caused the absence of the requirement.

Note that Fed. R. Bankr. P. 9019 does not state that an agreement is void or unenforceable in the absence of court approval. Also note that the Bankruptcy Code does not require court approval of debtors' agreements*. In re Telesphere Comms., Inc.*, 179 B.R. 544, 551

9

("Consistent with this legislative purpose, the Bankruptcy Code contains no requirement for judicial approval of settlements.") (citation omitted).

The Second Circuit noted that "[a]llowing a party to withdraw from a settlement pending court approval would deter parties from entering into settlements in the first place, would permit parties to abuse the bankruptcy process, and would run contrary to generally applicable contract and settlement principles in this Circuit." *Liberty Towers*, 734 Fed. Appx. at 70.

### III. Conclusion

The motion to Enforce Settlement is granted. The court will provide by separate order that the Debtor H&H Fast Properties, Inc. obtain court approval of the settlement agreement and follow through on all obligations assumed by it therein.

To rule otherwise would allow the Debtor to breach its agreement for no reason.

**Date: June 11, 2025**                                              **ENTERED:**

_____
**Jacqueline P. Cox**
**Chief Bankruptcy Judge**